IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Key West Division
CASE NO. _____

JOHN SIMARD and
LISA SIMARD,

      Plaintiffs,

v.

JIM YOUNG, CODE COMPLIANCE DIRECTOR
CITY OF KEY WEST, FLORIDA

      Defendant.

_____/

## VERIFIED COMPLAINT FOR DAMAGES AGAINST CITY OF KEY WEST CODE COMPLIANCE DIRECTOR JIM YOUNG FOR UNLAWFUL ARREST AND VIOLATION OF FEDERAL LAW

### GENERAL ALLEGATIONS

1. This is an action seeking damages against Defendant, Jim Young for depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

2. Defendant, while acting in his capacity as Code Compliance Director of the City of Key West, County of Monroe, State of Florida, deprived Plaintiffs of their rights, privileges and immunities guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

3. This Court has jurisdiction of this action under 42 USC Section 1983 and under 28 USC Sections 1331 and 1343.

4. Plaintiffs, John Simard and Lisa Simard are citizens of the United States and residents of the State of Texas.

5. Defendant Jim Young is the City of Key West Code Compliance Director and was, at all times material to this Complaint, a duly appointed employee of the City of Key West, Monroe County, Florida.

6. Defendant acted toward Plaintiffs under color of the Statutes, Ordinances, customs and usage of the State of Florida, City of Key West.

7. On the 21 day of March, 2020 Plaintiffs purchased a new 64' Sirena boat in Fort Lauderdale, FL, and began staying on the boat while it was docked there.

8. The Plaintiffs and two teenage sons left Fort Lauderdale headed toward Key West to anchor and dive in the Florida Keys on their new 64' boat on the 27th day of March, 2020.

9. While in route, their new boat started having mechanical and electrical problems with seawater coming into the engine room. Both Bilge pumps stopped working, generators were shutting down and the boat stabilizer failed.

10. Before arriving in Key West, Plaintiffs were communicating with the Broker who had sold them the boat and keeping the broker informed about the mounting problems that they were having with their new boat.

11. On April 2nd, 2020, Plaintiffs called the Key West Coast Guard Station, Monroe County and Key West Police Departments. The Key West Police directed Plaintiffs to call the Monroe County Attorney's Office.

12. An Assistant County Attorney Pedro Mercado verbally granted Plaintiffs permission to dock their boat in Key West after being informed of the serious problems Plaintiffs were experiencing with their new boat.

13. After calling a number of local marinas, Plaintiffs spoke with the A&B Marina who contacted the County Attorney's Office to verify that Plaintiffs has permission to dock their boat.

14. Before leaving their boat, Defendant Jim Young and two other persons arrived at the boat and after some discussion of the Key West restrictions (due to the COVID-19 virus), Defendant Young ordered Plaintiffs to leave the A&G Marina dock immediately and go to sea.

15. Plaintiffs explained to Defendant Young that they were aware of the City of Key West restrictions, but that their boat was in peril, in need of immediate repairs and was unseaworthy.

16. Plaintiff John Simard told Defendant Young that he believed Federal Admiralty Law allowed an unseaworthy vessel to remain safely in port until repairs could be made and that an Assistant County Attorney had given verbal permission to land and initiate repairs.

17. Defendant Young yelled, "City law is above County law" . . . and "leave immediately or I will have you towed" . . . and "Maritime law doesn't matter if you're at a dock in this City . . . I will have you towed" . . . and . . . "no new boats are allowed to dock."

18. The A&B Marina employee Kyle told Defendant Young that A&B Marina had another boat coming in the next day and that the boat had Coast Guard permission to dock. He advised Young, "I also understand maritime law, and I know that they have a right to tie up because their boat is in distress".

19. A&B Marina Manager, Travis Doll, kept Defendant Young informed about the ongoing repairs to Plaintiffs' boat, documenting mechanical work on the vessel commenced Friday, April 3rd, 2020.

20. In the afternoon of Thursday, April 8th, 2020, Defendant Young came to Plaintiffs' boat with a Key West Police Officer and instructed the Officer to arrest Plaintiff John Simard. The Key West Police Officer (Kenneth Waite) handed Plaintiff a "Notice to Appear" document.

21. On April 8th, when Defendant Young required Officer Waite to issue the criminal charge against Plaintiff, Defendant Young had known for nearly a week that the required repairs were being made and that Plaintiffs had remained on their boat.

22. The actions of Defendant Young violated federal law 46 U.S. Code, Section 10908, "Penalty for Sending Unseaworthy Vessel to Sea", This Federal Maritime Law states:

> "A person that knowingly sends or attempts to send, or that is a party to sending or attempting to send, a vessel of the Unites States to sea, in an unseaworthy state that is likely to endanger the life of an individual, shall be fined not more than $1,000, imprisoned for not more than 5 years, or both."

23. Defendant Young's illegal and malicious orders to leave the safe and secure A&B Marina dockage and put to sea before the required repairs to Plaintiffs' boat could be made were violations of Federal Law and in violation of the Constitution of the United States.

24. Defendant Young's illegal and malicious Order to Key West Police Officer Waite to arrest Plaintiff John Simard was a violation of federal law and violation of the Constitution of the United States.

WHEREFORE, Plaintiffs John Simard and Lisa Simard demand judgment against Defendant Jim Young for compensatory damages in the amount of One Hundred Thousand and No/100 ($100,000.00) Dollars and further demand judgment against Defendant Jim Young for punitive damages in the amount of Two Hundred Fifty Thousand and No/100 $250,000.00) Dollars plus attorneys' fees and costs of this action and such other relief as this Court deems just, proper and equitable.

Attached as Exhibit "A" is the Verification of Complaint against Jim Young by Lisa Simard.

Respectfully submitted,

HORAN LAW
608 Whitehead Street
Key West, FL 33040
(305) 294-4585


/s/ David Paul Horan
DAVID PAUL HORAN
Florida Bar No. 142474
David@horan.law

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

JOHN SIMARD and
LISA SIMARD,

      Plaintiffs,

v.

JIM YOUNG, CODE COMPLIANCE DIRECTOR
CITY OF KEY WEST, FLORIDA

      Defendant.

_____/

## VERIFICATION OF COMPLAINT AGAINST JIM YOUNG

STATE OF TEXAS

COUNTY OF TRAVIS

BEFORE ME, the undersigned authority, appeared Lisa Simard, who after first being duly sworn, states that:

I have reviewed the attached Complaint and it is true and correct to my personal knowledge.

On April 2, 2020, while my husband John, our 2 sons, and I were at sea going to Key West on our new boat. I called the Key West Coast Guard, the Key West police, and Monroe County. After being transferred multiple times and talking to numerous people in various legal capacities in the Key West area, I was verbally granted permission to dock by Pedro Mercado in the Monroe County Attorney's office. I had explained our need to repair our new boat. I then called multiple marinas in the Key West area seeking permission to reserve a space and dock so that the necessary repairs could be made. We were granted permission to dock by Kyle, a dock master at the A & B

Marina, after he told me he had checked with the Monroe County Attorney's Office. This occurred before we arrived in Key West. Upon arrival, we called A&B and we were immediately guided by Kyle into a slip at A&B Marina.

The couples on the other boats at the dock watched intently as we docked and we smiled and waved at them as we maneuvered our new boat into the slip. Many smiled and waved back.

After taking delivery of our new boat on March 21 and starting down the Florida Keys on March 27, we had major electrical and mechanical problems with our new boat, including flooding in the engine room. After a very long and scary ride, we had finally docked our new boat and repairs were commenced. We were relieved and happy to have found safety and meet some very helpful people at A&B Marina. Several people staying on boats at the marina walked by and said "Hi" and welcomed us.

Soon after docking, three City of Key West officials arrived: Mr. Navarro, a heavy-set woman in a white uniform, and Jim Young.

They asked no questions and bluntly informed us of the Key West Covid-19 restrictions. We stated that we had been made aware of the restrictions, but that our boat was in need of repairs in order to be seaworthy and return to where we took delivery of our boat. We told the City official that we had been granted permission to dock in Key West by the Monroe County Attorney's office based on federal maritime law. We provided the City Officials with contact information for the Monroe County Attorney's office so they could verify we had been given verbal permission to land. The City Officials walked away momentarily and returned with Kyle, an employee of A&B Marina.

We were never asked for identification, much less "refused" to identify ourselves. None of us claimed to be Key West residents. None of us claimed that we had been granted "permission

to dock" by the Florida Governor's office. My husband, John did tell them that we had been granted permission to dock by an attorney in the Monroe County Attorney's office. John stated that he believed that maritime law provided us the right to stay at the dock until our boat was seaworthy.

Upon his return to our boat, Jim Young told us to immediately leave. We stated that we couldn't leave and had been told that we were protected by maritime law. Mr. Young yelled, "City law is above county law!" . . . and to "Leave immediately" or he would "have us towed!" John again told him that our boat was in distress and would be repaired as soon as possible, then we would leave. Mr. Young yelled that "Maritime law doesn't matter if you're at a dock in my city— I will have you towed!" "No new boats are allowed to dock!" To the best of my memory this is what Mr. Young stated to us.

Mr. Young also stated to Kyle (an A & B Marina employee), "You let them dock," (pointing at our boat). Mr. Young then asked Kyle, "You have another boat coming in tomorrow, don't you?" Kyle replied, "Yes we do, and we have permission from the Coast Guard for that boat." He also told Mr. Young that he understood maritime law, and . . . "I know that they (gesturing toward us) have a right to tie up because their boat is in distress." Mr. Young responded, "Oh yeah? But you just told me that you are taking new reservations, so you're breaking the law!" John said to Mr. Young, "That is not what Kyle said at all!" Kyle said, "That's right. That is not what I said."

Mr. Young left and a little while later, Kyle came back to our boat and said, "I have some good news and some bad news. The good news is you can't be towed due to maritime law. The bad news is that Jim Young said none of you can step off this boat, or he will have you arrested."

Page 3 of 7

Travis Doll, the A&B Marina Manager and Kyle came by and reassured us that they would be happy to help us by taking our trash and assisting with grocery deliveries, etc., while we were getting our boat repaired. We thanked them for helping us and apologized for them having to endure this treatment from Mr. Young. We assured them that our boat was scheduled for immediate maintenance and would be repaired as quickly as possible. We also let them know that because we had just bought the boat, we now had no "home" or dock where we could go, so we were seeking a solution to our formidable problem and hoping we could convince the Key West Mayor to help us.

Later that evening, (April 2nd, 2020) we had a very brief visit from Thorpe and Sarah McKenzie. Thorpe is a long-time friend and board member of XBiotech, my husband's company. An hour or so after Mr. Young had left our boat, John had contacted Thorpe to see whether he was in town. Thorpe said that he and his wife were at their home in Key West. John told Thorpe that we would not be able to go to their house because we had been informed we were not to leave the boat. Thorpe told us that he and Sarah would come see us and our new boat.

Within minutes of the McKenzie's arrival, a bald man on the boat next to us started yelling at all of us to leave Key West now, to get our boat out of here, for "those people" (our friends) to get the hell out of here now, and that he was calling the police. The boat where the man was yelling was having a dinner party outside with 6 guests gathered.

Thorpe and Sarah didn't have time to tour our new boat. The McKenzie's had come inside for just a few minutes before Mr. Young arrived. Mr. Young yelled, "I told you that you're quarantined and I ordered you not to have any guests!" John replied, "You never said anything like that to us." I said, "You never said anything to us at all except that you were going to have us towed! Nobody from the city returned to our boat to say anything." I also said, "You made Kyle

come back and tell us that we will be arrested if we get off of this boat." I told Mr. Young. "We stayed on our boat." I asked Mr. Young, "Why are you doing this? Who are you helping? You are supposed to help people in your job. Who are you helping???" Mr. Young did not reply. Mr. Young ordered Thorpe and Sarah off the boat, took photos of their ID's, told them they were quarantined for 2 weeks, and ordered them to go home. The people on the boat next to us continued watching us from their dinner party, in full view of the City Officials. Mr. Young had positioned himself and projected his voice loudly so that the entire A&B Marina could view his 'performance'.

We did not talk with Mr. Young or hear from him again until I called Mr. Young by phone on April 7th. We never allowed another visitor to the boat while we were at A&B Marina. The only other people who came onto our boat were the boat mechanics who were fixing our boat.

On April 7, we arranged for our two teenage sons to return to our home in Austin, TX. They were scheduled to be picked up the next day at the Key West airport. I wanted to make sure my sons could legally leave our boat to go to the airport. Mr. Young never offered any contact information for us to reach him. (I didn't even know their names.) I called multiple phone numbers for the Key West police and was transferred numerous times in trying to reach someone who could assure me that our boys could leave the boat for their flight the next day. I had a couple of Police employees tell me that according to their understandings of the restrictions, it would be OK for them to leave. I kept trying to reach someone who was familiar with our boat and our situation. Finally, I called another number and as I explained our situation (for about the tenth time), I was rudely interrupted and told, "I know exactly who you are, Lisa Simard. I just got off the phone with the city attorney and I'm having your boat towed tomorrow." It was Mr. Young. I asked why, and he said it was because he hadn't received any documentation to verify that our boat's

mechanical issues were being worked on. I replied, "You never asked us to send you anything and we were never given your contact information." I asked, "Were we supposed to provide this documentation to you?" Mr. Young replied, "No. I told Travis (of A&B Marina) to provide this information to me and he hasn't given me anything." I said, "Travis and Kyle have seen the mechanics visiting our boat daily and they have documentation. Will you please contact Travis and see if he has the documentation you need"? I asked Mr. Young if he would like me to send information to him. Mr. Young said, "No. I am going to verify this with Travis."

Travis and Kyle had seen the mechanics coming and going and working on our boat for days. Nobody had requested documentation from us—Mr. Young never requested any documentation from the mechanics. I told Mr. Young that the mechanics were working on our boat daily and I offered to provide documentation, but he refused my offer. Mr. Young also stated that he and a police officer would come to the dock the next day and 'escort the boys off the dock'.

On the morning of April 8, Travis Doll requested documentation of the mechanics visits for him to send to Mr. Young. John sent this documentation to Travis in less than an hour, and Travis immediately forwarded the documentation to Mr. Young.

We were notified that the plane for the boys had arrived early. I called Mr. Young and got a voicemail. I left a message that the boys were leaving earlier than anticipated for the flight. I think I also stated in that voicemail that Travis had all the mechanics documentation that he had requested. That afternoon, after Mr. Young had received documentation and statements that our boat was in the process of being repaired, Mr. Young came to our boat and brought a Police Officer who apologetically issued John a "Notice to Appear". The officer told John, "I'm sorry. I've been told to do this by powers on high."

Mr. Young knew when he required the Police Officer give John the "Notice to Appear" that our vessel had required repairs which were being addressed daily by the mechanics. Mr. Young knew that while he was requiring the officer to give John the "Notice to Appear" a mechanic was right there working on our boat. Mr. Young also knew that we had no visitors since the McKenzie's and that we had followed his orders since the night of April 2.

When Mr. Young and the Police Officer left, Travis told us that he had spoken with Young that morning and had provided Mr. Young the mechanics' documentation. Travis stated that Mr. Young told him he didn't need anything else, and acted as if there was no further problem.

FURTHER AFFIANT SAYETH NOT.

LISA SIMARD

SWORN TO AND SUBSCRIBED before me by LISA SIMARD who states that she has read the foregoing Affidavit and to the best of her knowledge and belief, the contents thereof are true and correct. Lisa Simard is personally known to me or who has produced _Passport_ as identification on this _14th_ day of May, 2020.

NOTARY PUBLIC – State of Texas                    (SEAL)



ASHLEY A KNIGHT
Notary ID #128361798
My Commission Expires
August 19, 2022